MODJESKI AND MASTERS, a partnership composed of F. M. Masters, O. F. Sorgenfrei, T. R. Kealey, R. D. Hutton and F. M. Masters, Jr., Appellants,

*v.*

DAVID M. PACK, Commissioner of the Department of Highways of the State of Tennessee, Appellee.

388 S.W.2d 144.

(*Nashville,* December Term, 1964.)

Opinion filed March 4, 1965.

630

TAYLOR & TAYLOR, Memphis, DENNEY, LEFTWICH & LACKEY, Nashville, for appellants.

GEORGE F. MCCANLESS, Attorney General, J. MALCOLM SHULL, Assistant Attorney General, for appellee.

Mr. Justice Holmes delivered the opinion of the Court.

This is an appeal by the complainant below from a decree of the Chancery Court dismissing the original bill, which prayed for writs of injunction and mandamus, on defendant's motion, which was in the nature of a demurrer.

The bill alleges that on February 14, 1957, appellant entered into a written contract with the Department of Highways and Public Works of the State of Tennessee (now the Department of Highways of the State of Tennessee) by which appellant agreed to furnish and perform various professional services as consulting engineers in assembling all data and making all necessary preliminary studies, plans, and cost estimates to permit the Department of Highways and Public Works to determine the feasibility of constructing a bridge across the Mississippi River at Memphis as a part of the Interstate Highway System, and the proper location thereof. The contract was executed by a predecessor in office of the appellee and was countersigned by the then Tennessee State Highway Engineer. A copy of the contract is made an exhibit to the bill. Appellant's compensation is provided for in the contract, as follows:

"The Department agrees to pay to the Engineers, as compensation for the above-described professional engineering services, a total lump sum of $17,500 in

monthly installments of $3,500 until a total of $14,000 has been paid, and the remainder of said fee shall be paid upon delivery of the report mentioned above. In the event the studies to be made by the Engineers should develop the fact that it is not at present feasible to build a bridge in the vicinity of Winchester Avenue and Auction Street in Memphis or in the event of the termination of this contract by said Department for any reason, the Engineers shall be compensated for all services rendered to date at the Engineers' payroll cost, including drawing accounts of the partners plus one hundred per cent to cover overhead and profit plus the actual out-of-pocket direct expenses incurred in connection with the work, but not more than said lump sum fee of $17,500.''

The contract then provides that, in the event the construction of the proposed bridge proceeds beyond the making and publishing of its preliminary report, the appellant:

''* * * will be given an opportunity to submit to said Department and the other agencies involved a mutually satisfactory agreement for the use and services of the Engineers in connection with such additional work.''

It is this last quoted provision of the contract upon which the present bill is predicated. The ''other agencies involved'' are the Arkansas State Highway Commission and the United States Bureau of Public Roads.

The bill further alleges that the appellant performed all the services required of it under the contract, for which it has been paid the sum of $14,000.00, and performed additional services, that as a result of appellant's efforts and reputation the War Department of the United

States issued its permit for the construction of the bridge in February 1964. The bill further states that shortly before the filing of the bill the appellant learned that appellee had agreed to employ another firm of consulting engineers for the final design of the bridge and gave no satisfactory explanation to appellant as to why it was not given an opportunity to submit a proposal.

The bill prays:

(1) for process;

(2) that a restraining order issue pending the hearing enjoining the appellee from entering into any contract which is in conflict with or which interferes with the contract sued on;

(3) that the injunction be made permanent;

(4) that writ of mandamus issue requiring the appellee "to render complainant an opportunity to submit and negotiate with the Department of Highways of the State of Tennessee a contract mutually satisfactory and agreeable to the parties for the performance of such additional services and work as may be required to complete the construction of the proposed bridge.";

(5) that appellee be required to pay the unpaid balance due under the contract and be required to pay for additional services performed by appellant beyond the terms of the contract; and,

(6) for general relief.

Upon the filing of the bill, the Chancellor issued notice of a hearing on the application for temporary injunction. On the day of this hearing, the appellee filed a written motion to dismiss the bill upon the ground that it is in

effect and substance a suit against the Highway Commissioner of the State of Tennessee in an effort to reach the State, its treasury, funds or property in violation of T.C.A. sec. 20-1702 and in violation of Article I, Section 17 of the Constitution of Tennessee, and upon the further ground that the bill is an effort on the part of appellant "to coerce defendant by mandamus and restrain him by injunction in the exercise of his discretion and performance of his quasi-judicial duty as a public official of the State of Tennessee." Also, on that same date, "without waiving his motion to dismiss, but expressly relying thereon," appellee filed an answer to the bill.

On the same day these pleadings were filed, a decree was entered showing that the cause came on to be heard upon the original bill, the fiat setting the cause for hearing on application for injunction and mandamus, and also "upon the written motion to dismiss of the defendant filed herein, the defendant having filed his answer in which he stated that the same was filed without waiving his motion to dismiss". This decree sustained the motion to dismiss and dismissed the bill at appellant's cost.

In the brief of appellant, it is stated that the provision in the contract that appellant be given an opportunity to submit a mutually satisfactory agreement for the use and services of the appellant in connection with the additional work, "is but a subtle and sophisticated statement customarily contained and included in all contracts of this type, which is intended to give the engineers doing the preliminary design work the preference in drawing the final design and plans of such a project as this and supervision where required." Appellant's brief further states, "It was obviously drawn to avoid running afoul of the rule of law that an official cannot obligate his office

beyond the term for which he was elected or appointed as respects governmental or legislative matters.''

██ While counsel state that such was the purpose of this language and that such language is customarily included in such contracts, we are cited to no authorities holding that this language achieves the result contended for by appellant. In arguing that the suit does not contravene T.C.A. sec. 20-1702, the appellant's written brief concedes that this language ''does not obligate the State of Tennessee to accept the contract when submitted.'' Appellant's brief further states:

''Perhaps the proposal will be declined. Perhaps it will be accepted. This is an obligation of the Appellee and the other interested governmental agencies to determine and not the responsibility of this Court.''

It thus appears that the purpose of the bill is to require the appellee to entertain a proposal from appellant which the appellee in his discretion would be entirely free to accept or reject. The selection of the architect and engineer to design the proposed bridge rests in the sound discretion of the proper officials of the governments affected. Because discretion is involved in the selection of the ones to perform professional services requiring special training and skill, public contracts for such services are not the subject of competitive bids. In 43 Am. Jur., Public Works and Contracts, sec. 28, page 770, it is stated:

''As a general rule, statutory and constitutional provisions prohibiting letting of contracts by a state or by municipal subdivisions, without first advertising for bids, do not apply to contracts for professional services, such as the services of physicians or attorneys, or

to contracts requiring special training and skill, such as contracts calling for the services of architects, engineers, accountants, or the like, and such contracts may be let without bids.''

■ By the terms of T.C.A. sec. 54-516, contracts which are let on bids by the Tennessee Department of Highways are awarded to ''the bidder making the best and most advantageous offer.'' Even in the awarding of these con-tracts, certain discretion is reposed in the State Commissioner of Highways. In 43 Am.Jur., Public Works and Contracts, sec. 44, page 787, it is stated:

''Where contracts are to be let on terms most advantageous to the state or to the public, the discretion in making the award is particularly broad, and will not be interfered with by the courts if exercised on a rational basis, without fraud or palpable abuse.''

■ It is further well settled law that ''an agreement which controls or restricts, or tends or is calculated to control or restrict, the free exercise of a discretion for the public good vested in one acting in his public official capacity is illegal and reprobated by the courts, so that no redress can be given to a party who sues for himself in respect of it.'' 43 Am.Jur., Public Officers, sec. 295, page 104.

■ In the light of these well settled legal principles, it was, of course, necessary that the appellant concede that the courts have no authority to direct the appellee to employ any particular firm of engineers to design the proposed bridge. The bill shows that the appellee, in the exercise of the discretion reposed in him, has decided upon the firm of engineers he desires to employ to render this service. To require the appellee to render the appel-

lant an opportunity to submit a proposal to appellee which the appellee is admittedly free to reject would be a useless thing. It is an ancient maxim of equity that "The law commands not useless things, because useless labor is foolish." Gibson's Suits in Chancery, 5th Ed. sec. 71, page 86, footnote 13.

This principle was applied in *Case v. Blood,* 68 Iowa 486, 27 N.W. 470. There, a writ of mandamus was sought to compel the directors of two townships to meet and make an equitable division of certain assets. The defendants claimed that they had attempted to reach an agreement before and had been unable to do so. The Iowa Court held that to order further negotiations between the two sets of public officials would be futile and, upon that ground, refused to issue a writ of mandamus to require such a meeting.

In the English case of *King v. Mayor of Bristol,* 1 Dowl. & Ry. 389, 16 Eng.Com.L.Rep. 43 (1822), a public prosecutor had been removed from office upon the ground of his non-residence and upon the ground he had accepted another office. The prosecutor petitioned for reinstatement. The Court held:

"It would be a very extraordinary proposition if the Court thought itself warranted in commanding a corporate body to restore a person to an office from which they had removed him, for what appeared to them to be a sufficient cause, when the very next moment they might exercise the same right on precisely the same grounds." 16 Eng.Com.L.Rep., at 44.

This Court, in *Insurance Company v. Craig,* 106 Tenn. 621, 639, 62 S.W. 155, 159, held:

"The rule is so general and obvious as to be almost axiomatic, that a public officer clothed with discretionary or *quasi* judicial power, as contradistinguished from mere ministerial duty, cannot be coerced by mandamus or restrained by injunction in the exercise of his judgment under that power; otherwise, the court would substitute its judgment for his, which is not permissible."

■ It is urged that the Chancellor "erred in granting appellee's written motion to dismiss when he had filed an answer prior to setting the motion down for argument and disposition of the same." As heretofore stated, the motion to dismiss was in the nature of a demurrer. This contention of appellant is fully answered by *Fritts v. Leech,* 201 Tenn. 18, 24, 25, 296 S.W.2d 834, 837, in which the Court stated:

"The only other alleged error that we deem necessary to advert to is that the defendants waived their demurrer by filing it along with the answer. There is no merit in this assignment.

" 'The matter of demurrer may, however, under the Code, be incorporated in the answer; and in such a case the answer may cover matter so relied on without overruling the grounds of the demurrer set up, unless such grounds dispute the jurisdiction of the Court over the subject-matter or the person.' Gibson's Suits in Chy., sec. 403, p. 347; T.C.A. sec. 21-616."

Insofar as the bill prays for a writ of mandamus to require appellee to pay appellant on a quantum meruit basis for services alleged to have been rendered over and above those provided for by the contract the amount of the claim is unliquidated.

In *Peerless Const. Co. v. Bass,* 158 Tenn. 518, 14 S.W. 2d 732, a construction company brought suit against the Highway Commissioner to enforce the payment to it by mandamus of an unliquidated claim for compensation for work alleged to have been performed in highway construction in connection with, but in addition to, that called for by a contract with the Commissioner. The Chancellor sustained a demurrer to the bill for mandamus. This Court affirmed and quoted with approval from 38 C.J., as follows:

> "And on page 582 of the same work it is said that 'the purpose of a writ of mandamus is not to establish a legal right,' the very thing which complainants in this suit seek to do, 'but to enforce one which has already been established.' And, again, at page 761, with particular applicability to the situation now before us it is said, under the subhead 'Unliquidated Claims,' that, 'While there is some authority to the contrary, it is very generally held that mandamus will not lie to compel payment of an unliquidated claim. It is essential that the claim should have been reduced to judgment, or that it should have been allowed by the officer or board vested with power to allow or reject the same. And if the officer whose duty it is to make the payment must himself, at his own risk, inquire into the validity and the amount of the claim, he cannot be compelled by mandamus to make payment.' "

While the bill alleges that appellant performed all of the services required of it under the contract, the bill does not allege the delivery of its final report to the appellee. Paragraph A of the contract provides that all original tracings, plans, specifications, and maps prepared or obtained under the terms of this contract shall

be delivered to and become the property of the Highway Department. The delivery of these items to the Highway Department is a prerequisite to appellee's liability for the final $3,500.00 of the lump sum fee called for in the contract.

If the purpose of the contract provision that appellant be given an opportunity to submit to appellee a proposal for the final design of the bridge is to give the appellant, as preliminary design engineer, the preference in drawing the final plans for the project, as is contended by appellant, and if such provision is enforceable, then, by such a device, one Commissioner of the Department of Highways could dictate to whom his successors in office would give preference in the awarding of future engineering contracts. This would, of course, control or restrict the free exercise of a discretion for the public good vested in the present Commissioner. As stated in 43 Am.Jur., Public Officers, sec. 292, pages 101, 102:

"Obviously, contracts extending beyond the terms of the officers executing them will be held invalid where the making of the contracts tends to limit or diminish the efficiency of those who will succeed the incumbents in office, or usurps power which was clearly intended to be given to the successors."

It is aptly pointed out in the brief of appellee that on this feature of the case "The Appellant fails to distinguish between a present contract, the performance of which will extend beyond the term of office of the officer entering into it and a proposal to negotiate a future contract of employment after the term of his office."

Having fully considered the contentions of the parties, we can only conclude that the bill in the present

case is an effort on the part of appellant to coerce the appellee by mandamus and restrain him by injunction in the exercise of his discretion and performance of his quasi-judicial duty as a public official of the State. The matters set forth in the bill do not allege a justiciable controversy in which relief may be granted. The Chancellor did not commit error in sustaining the second ground of appellee's motion to dismiss. Insofar as the bill seeks to require payment of the balance of the lump sum fee called for in the contract and payment for extra services heretofore rendered, the dismissal of the bill is without prejudice to the right of appellant to seek relief in a proper proceeding, if such be necessary.

The judgment of the Chancery Court is affirmed at appellant's cost.