MARYLAND CLASSIFIED EMPLOYEES ASSOCIATION,
INC. ET AL. *v.* CHARLES B. ANDERSON,
JR. ET AL.

[No. 20, September Term, 1977.]

*Decided December 7, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*J. Edward Davis* and *Daniel T. Doherty, Jr.,* with whom were *J. Calvin Jenkins, Jr.,* and *Weinberg & Green* on the brief, for appellants.

*N. Peter Lareau,* with whom were *A. Samuel Cook, Paul F. Strain, Christopher H. Mills, Venable, Baetjer & Howard* and *John E. Kelly, County Attorney,* on the brief, for appellees.

ORTH, J., delivered the opinion of the Court.

We decide on this appeal that compensation of employees of a chartered county may not be committed to binding arbitration unless so authorized by a public general law of Maryland or the organic law of that county. We hold specifically that those provisions of the Harford County Code (1965) (the County Code) requiring that such matters with respect to Harford County be submitted to binding arbitration are invalid as not authorized by a public general law or the Harford County Charter (1973) (the County Charter).

## I

We are called upon to determine the propriety of an order of the Circuit Court for Harford County denying a petition for a writ of mandamus and for damages which was filed on behalf of all the employees of Harford County who are members of the General Work Force Unit (GWFU) and the Management and Confidential Unit (MCU) by Jack Allen Plott, a member of the GWFU, by Richard Wheeler, a member of MCU, and by the Maryland Classified Employees Association, Inc. (MCEA), which is certified as the exclusive bargaining representative of the employees in the two Units (the appellants). The defendants named in the action were Harford County, Maryland, a body corporate and politic (the County), Charles B. Anderson, Jr., individually and as County Executive, and those persons composing the County Council of Harford County (the Council). A demurrer by Anderson, individually, was sustained without leave to amend and this ruling is not questioned on appeal. The appellees are the County, the County Executive in his official capacity and the County Council.

The suit stemmed from MCEA and the County seeking an agreement under § 201 B of the County Code with respect to compensation of the County employee members of GWFU and MCU. Negotiations began in the fall of 1974. An impasse was reached and the dispute was submitted to arbitration. An arbitration award was issued on 23 May 1975. Under the award, wages were to be increased 7.8% for the next fiscal year (1975-1976), the employees were to receive in-grade step increases on their regular anniversary dates, and the maximum major medical coverage was to be increased from $10,000 to $20,000. Although § 201 B (h) (5) prescribed that the decision of the arbitration board be binding on both parties, the County did not put the award into effect. On 27 May 1975 the County Executive proposed to the Council that all County employees would receive a raise of 7.8% effective 1 July 1975. The Council rejected the proposal. On 29 May the County Executive proposed a $640 across-the-board raise without step increases for all classified employees and exempt secretaries, with certain exceptions, who would not

have received that amount under those proposals. This increase was included in the annual budget and appropriation ordinance and was adopted by the County Council on 31 May. No other action was taken by the County to implement the award of the arbitrator. Appellants instituted the action on 14 July 1975. Upon the denial of the petition by the trial court on 18 October 1976, MCEA, Plott and Wheeler noted an appeal to the Court of Special Appeals. We issued a writ of certiorari before decision by that court.

We affirm the judgment of the Circuit Court for Harford County. In so doing, we first affirm an interlocutory order of the trial court denying a motion made by appellants to prohibit appellees from interposing the defense that § 201 B was invalid.

## II

The threshold question posed by the interlocutory order, *see* Maryland Rule 887, denying the motion to prohibit is whether a charter county may attack the validity of its own legislative acts. Precisely, the issue is whether, in an action to compel Harford County, a charter county, to abide by the provisions of a law it duly enacted, it may interpose the defense that the law was invalid?

Appellants would have us hold that appellees cannot challenge the validity of § 201 B. In oral argument before us, however, appellants frankly admitted that they did not know the answer to the question, remarking that they were not aware of any "real law on that in Maryland." They did not refer to any case directly on point in other jurisdictions. They suggested that inasmuch as it was the two bodies in Harford County, namely the County Council and the County Executive, which "put this law on the books and made it valid," they were "therefore bound, in and of themselves, to the constitutionality [and validity] of the law." This was in accord with the comment in appellants' brief that it was "remarkable and contradictory" that appellees have challenged the constitutionality and validity of § 201 B, the very law which the Council passed and the County Executive approved and signed into law. Appellants point to the

unsuccessful efforts to repeal the provisions under which arbitration is binding.[1] "Therefore," appellants conclude, "the County Executive and the County Council having enacted § 201 B, having had opportunities to repeal and to amend § 201 B, cannot now challenge its constitutionality and its validity." Appellees characterize this "line of reasoning as totally circular." They say: "Appellants have done no more than assume the merits of their position with respect to Appellees' authority to enact such legislation and conclude that since Appellees possess the authority, they cannot argue that they did not possess it."

It is correct that on the threshold question we write on a clean slate as far as Maryland is concerned. Our recent opinion in *Harford County v. Schultz*, 280 Md. 77, 86, 371 A. 2d 428 (1977) in which we found no justiciable issue in a declaratory judgment action, is not apposite. *Baltimore County v. Churchill, Ltd.*, 271 Md. 1, 313 A. 2d 829, *app. dism.*, 417 U. S. 902 (1974) and *City of Baltimore v. Concord*, 257 Md. 132, 262 A. 2d 755 (1970), which appellants cited in their brief for the proposition that "Maryland practice has long provided that political subdivisions lack capacity to question the validity of state law," are not controlling even by analogy, for here, as the trial court noted, "it is the creator, and not a subordinate, which is questioning its own power."

---

1. Harford County Bill No. 75-38, introduced in a succeeding County Council on 6 May 1975 as an emergency measure, provided for the repeal of the binding arbitration provisions of § 201 B (h) (5). It failed of passage by a vote of six to one. Thereafter, on 5 August 1975, Bill No. 75-66 was introduced. It repealed § 201 B and added a new Article 3, entitled "Employee Labor Relations," to Chapter 16 of the Harford County Code. As proposed, the only change it made in the provisions of § 201 B here relevant was to make arbitration of a dispute after an impasse advisory rather than mandatory. As amended and unanimously passed, however, binding arbitration was retained. "The opinion of the arbitrator shall be binding on both the County and the representative unit." § 16-98 (b) (4). But it was provided: "Notwithstanding the provisions of this Article providing for arbitration, if the County Council, by unanimous vote, all duly seated members being present, decide that the County's fiscal posture is such that the total funds recommended by the County Executive cannot be funded during the contract year, the County Council reserves the right, duty and obligation to determine the amount of monies that can be funded by the County to support the proposed contract . . . ." § 16-98 (b) (7). Except for an amendment in 1976 (Bill No. 76-73) of § 16-100 regarding strikes, lockouts and agency shops, Bill 75-66 as enacted is presently the law.

Appellees refer to six cases of this Court which they say clearly support their position that they may challenge the validity of the law. None of them, however, as the trial court recognized, is dispositive of the question, simply not addressing it in the context in which it is before us.[2] Nor are we led to appellees' position by the cases in other jurisdictions cited by them.[3] As appellees indicate, in those cases public employers defended suits in which employee organizations sought to compel compliance with impasse-resolving arbitration provisions by contending that the particular laws were invalid. In none of the cases, however, was the issue of the right of the enacting authority to attack the law it enacted presented or discussed, so the question before us was never reached.

---

2. M. & C. C. v. Chesapeake, 233 Md. 559, 197 A. 2d 821 (1964) and Hagerstown v. Hagerstown Rwy., 123 Md. 183, 91 A. 170 (1914) applied estoppel with respect to an action of a municipal corporation performed within its powers, the rule being: "In proper cases, where great injustice and loss would otherwise result, a municipality which had the power to act and did act by officials authorized to do so, so as to induce another to expend efforts and monies, may be estopped to deny that its official and binding consent did not induce the expenditures." Chesapeake, 233 Md. at 578.

Gontrum v. City of Baltimore, 182 Md. 370, 35 A. 2d 128 (1943) dealt with estoppel with regard to an act of officers of a public corporation performed without power. It said, *id.* 182 Md. at 378: "No representation, statement, promises or acts of ratification by officers of a public corporation can operate to estop it to assert the invalidity of a contract where such officers are without power to enter into such a contract on behalf of the corporation."

Mealey v. Hagerstown, 92 Md. 741, 48 A. 746 (1901) concerned an *ultra vires* act by a municipal corporation or want of power under its charter to do a given act: "Every one dealing with the officers and agents of a municipal corporation is charged with knowledge of the nature of their duties and extent of their powers; and hence a municipal corporation may set up a plea of *ultra vires* or its own want of power under its charter or constituent statute, to enter into a given contract or to do a given act in excess of its corporate powers and authority." *Id.* 92 Md. at 753. To like effect are State v. Kirkley, 29 Md. 85, 110-111 (1869) and Baltimore v. Eschbach, 18 Md. 276, 282-283 (1862).

Appellees also cite Williamsport v. Sanitary District, 247 Md. 326, 231 A. 2d 40 (1967); Lipsitz v. Parr, 164 Md. 222, 164 A. 743 (1933); and Baldwin v. Trimble, 85 Md. 396, 37 A. 176 (1897), with the signal *"cf."* but without an explanatory parenthetical. We find them to be no more controlling than the other cases cited.

3. San Francisco Fire Fight., Etc. v. City & Cty. of San Fran., 68 Cal. App. 3d 896, 137 Cal. Rptr. 607 (1977); Greeley Police Union v. City Council of Greeley, 553 P. 2d 790 (Colo. 1976); Littleton Ed. Ass'n. v. Arapahoe Cty. Sch. Dist., 553 P. 2d 793 (Colo. 1976); Board of Education v. Chicago Teach. U., Loc. 1, A.F.T., 26 Ill. App. 3d 806, 326 N.E.2d 158 (1975); Dayton Classroom Teach. Ass'n. v. Dayton Bd. of Ed., 41 Ohio St. 2d 127, 323 N.E.2d 714 (1975); State v. Johnson, 46 Wash. 2d 114, 278 P. 2d 662 (1955).

On the other hand, we are not persuaded by the cases in other jurisdictions which appellants cite in support of their claim that appellees cannot mount an attack on the validity of § 201 B.[4]

There are a number of cases throughout the country in which governmental entities or their officers have challenged the validity of their own enactments. In many of them, however, the threshold question is simply not raised; the

4. Greenhills Home Own. Corp. v. Village of Greenhills, 5 Ohio St. 2d 207, 215 N.E.2d 403, *cert. denied,* 385 U. S. 836 (1966) held that where the Home Owners Loan Corporation procured village adoption of a comprehensive zoning ordinance, failed to disclose to the village legal advice that a restriction in the ordinance was unconstitutional, and thereafter purchased substantially all the land affected by the ordinance and secured a reduction in purchase price, it was estopped from attacking the restriction on the ground it constituted a taking of private property without compensation or due process.

Board of Levee Com'rs. v. Johnson, 178 Ky. 287, 310, 199 S. W. 8 (1917) concerned an action to enjoin a board of levee commissioners from collecting a tax levied to maintain a levee and applied the principle that "[t]o work an estoppel that will deny the right to assail unconstitutional legislation, there must be clear evidence showing that the party sought to be estopped aided in procuring the legislation and derived benefit therefrom, and that to set it aside would work a hardship or injustice on others who were misled to their prejudice into believing that the legislation was valid . . . ."

Sweeney v. State, 251 N. Y. 417, 167 N. E. 519 (1929) is a per curiam opinion in which the Court of Claims held that the State of New York had failed to perform its contract with the claimants and awarded damages and interest pursuant to a state law. The Appellate Division held the statute unconstitutional in its retroactive operation on the ground that it deprived the state of property without due process of law. Reversing, the Court of Appeals said: "Certain it is that the state which enacted it may not be heard to complain that the enactment is void as a violation of 'due process.' " *Id.* at 419-420.

Black River Regulat. Dist. v. Adirondack League Club, 307 N. Y. 475, 121 N.E.2d 428 (1954), *app. dism.,* 351 U. S. 922 (1956) was an action by a river regulating district and members of the district board to maintain condemnation proceedings. It relied on *Sweeney* for the proposition that "the State cannot challenge its own act." *Id.* at 489. Dalton v. Van Dien, 72 Misc. 2d 287, 292, 339 N.Y.S.2d 378 (1972) relied on *Sweeney* and *Black River* for the same proposition. *Sweeney* and cases relying on it for the general proposition that the State cannot challenge its own acts, ordinarily offer no reasoning in support. Those cases following the *Sweeney* line which attempt to give a reason appear to apply waiver. *See* Jackson v. New York, 261 N. Y. 134, 139, 184 N. E. 735 (1933) (citing *Sweeney); see also* Davis v. Dawes, 4 Watts & S. 401, 402 (Pa. 1842); Demoval v. Davidson County, 87 Tenn. 214, 223, 10 S. W. 353 (1889); Henry v. McKay, 164 Wash. 526, 535, 3 P. 2d 145 (1931). *Compare,* People v. Frisbie, 26 Cal. 135, 141 (1864). The governmental body granted a right which it waived by passage of the law so that violation of due process was not invoked. Here, however, there was no grant to Harford County by a constitutional or charter provision of a right which the enactment of the challenged ordinance could be deemed to have waived.

courts have proceeded directly to the merits of the issue without regard to the propriety of the challenge. Even when the threshold question is considered, no persuasive pattern of decision emerges to dictate its determination. In sum, it seems that, in actuality, the point is left to the discretion of the court. The various courts have considered a number of interests in determining how to exercise that discretion. Under the ordinance here, when the arbitration decision is duly reached, it is binding. Thereafter, the county officials have no discretion with regard to implementing the decision, and their duties in connection with it may be fairly characterized as ministerial. Many states have recognized the principle that a public officer may not attack the constitutionality of a statute in a mandamus proceeding brought to compel the officer to perform a ministerial duty imposed by that statute when his interest is official and not personal. This principle, in keeping with the generally accepted axiom that a litigant can question the constitutionality of a statute only when it is applied to his disadvantage, is based largely upon governmental policy. "It rests upon the theory that the court should accept as final the acts of the Legislature and discourage attacks upon them except where necessary to protect the private interests of the individual asserting invalidity and peculiarly and particularly affected thereby." *State v. Steele County*, 181 Minn. 427, 430, 232 N. W. 737 (1930). The cases recognizing this principle, however, are not precisely analogous to the case at hand because they do not involve officials directly engaged in the law-making process.[5]

---

5. *See, e.g.*, Lamm v. Barber, Colo., 565 P. 2d 538 (1977); People v. Pitcher, 61 Colo. 149, 156 P. 812 (1916); Barr v. Watts, 70 So. 2d 347 (Fla. 1953); State v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922); Mallet v. Harper, 182 Ga. 506, 185 S. E. 798 (1936); Jewett v. Williams, 84 Ida. 93, 369 P. 2d 590 (1962); People v. Salomon, 54 Ill. 39 (1870); Sarlls v. State, 201 Ind. 88, 166 N. E. 270 (1929); Brunner v. Floyd County, 226 Iowa 583, 284 N. W. 814 (1939); Hewitt v. Keller, 223 Iowa 1372, 275 N. W. 94 (1937); Penny v. Bowden, 199 So. 2d 345 (La. App. 1967); Assessors v. Tel. & Tel. Co., 332 Mass. 357, 124 N.E.2d 917 (1955); Smyth v. Titcomb, 31 Me. 272 (1849); St. Louis County v. Litzinger, 372 S.W.2d 880 (Mo. 1963); State v. County Court of Barry County, 363 S.W.2d 691 (Mo. 1963); State v. Tyler, 64 Mont. 124, 208 P. 1081 (1922); State v. Baker, 74 N. D. 244, 21 N.W.2d 355 (1945); Dept. of State Highways v. Baker, 69 N. D. 702, 290 N. W. 257 (1940); Shawnee v. Taylor, 191 Okla. 687, 132 P. 2d 950 (1943); Commonwealth v. James, 135 Pa. 480, 19 A. 950 (1890); State v. Burley, 80 S. C. 127, 61 S. E. 255 (1908); State v. Candland, 36

The Superior Court of New Jersey took the flat position that "[a] municipality itself cannot question the validity of its own ordinance. If it becomes discontent therewith, the remedy lies in repeal or amendment . . . ." *Springfield Tp. v. Bensley,* 19 N.J.S. 147, 164, 88 A. 2d 271, 279 (1952). On the other hand, a few courts have permitted an. official to interpose the unconstitutionality of a statute as a defense on the theory that an unconstitutional act is a nullity.[6] The defense has also been allowed on the ground that the oath of a public officer to obey the constitution obligates him to make a determination of the statute's constitutionality before obeying it,[7] but other courts have rejected this ground as without merit.[8] Further, 6 *McQuillin Mun. Corp.* § 20.24 (3rd ed. 1969) states:

> "The invalidity of an ordinance may be raised by any interested party to litigation where it is asserted that lawful action is dependent on or derived from the organic law. [Mandamus] is available in a proper case to compel public officers to enforce a municipal ordinance, and in such a proceeding the validity of the ordinance may be in issue."

It relies on *Kendall v. Malcolm,* 98 Ariz. 329, 334, 404 P. 2d 414 (1965) in which a municipality challenged the validity of its own ordinance, citing a violation of the municipal charter.

---

Utah 406, 104 P. 285 (1909). *See* Braxton County v. West Virginia, 208 U. S. 192, 197, 28 S. Ct. 275 (1908); Smith v. Indiana, 191 U. S. 138, 142-149, 24 S. Ct. 51 (1903). *Cf.* Columbus v. Miller, 283 U. S. 96, 99-100. 51 S. Ct. 392 (1931); Massachusetts v. Mellon, 262 U. S. 447, 43 S. Ct. 597 (1923). *See also* 30 A.L.R. 378; 129 A.L.R. 941; Note, *Public Officer's Right to Question the Constitutionality of a Statute in Mandamus Proceeding,* 42 Harv. L. Rev. 1071-1074 (1928); 52 Am. Jur.2d *Mandamus* §§ 94-103 (1970). *Compare,* State v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922).

6. Van Horn v. State, 46 Neb. 62, 64 N. W. 365 (1895); McCurdy v. Tappan, 29 Wisc. 664 (1864); Payne v. Staunton, 55 W. Va. 202, 46 S. E. 927 (1905) (reviews authorities on principle). *Compare,* Barr v. Watts, 70 So. 2d 347 (Fla. 1953). *See* Little Rock v. Worthen, Ark., 120 U. S. 97, 7 S. Ct. 469 (1887): 52 Am. Jur.2d *Mandamus* § 96 (1970).

The theory has been criticized. *See,* Note, *Public Officer's Right to Question the Constitutionality of a Statute in Mandamus Proceeding,* 42 Harv. L. Rev. 1071 (1928).

7. Van Horn v. State, 46 Neb. 62, 64 N. W. 365 (1895).

8. State v. Steele County, 181 Minn. 427, 232 N. W. 737 (1930). In any event, here the County Council had it in their power to repeal the ordinance if it believed it to be unconstitutional.

5 *McQuillin Mun. Corp.* § 19.04 (3rd ed. 1969) asserts, however, that "only one who is prejudiced by an ordinance may raise the question [of its constitutionality]." We see no distinction between the "validity" and the "constitutionality" of an ordinance in this context, noting that 5 *McQuillin Mun. Corp.* § 15.19 (3rd ed. 1969) declares that it is firmly established that "[t]he charter of the city is the organic law of the corporation, being to it what the constitution is to the state, and the charter bears the same general relation to the ordinances of the city that the constitution of the state bears to the statutes." Certainly, the charter of a county is in the same position as the charter of a city in this regard.

Many of the states which recognize the general principle that a public officer may not attack the constitutionality of a statute imposing ministerial duties in a proceeding brought to compel performance of those duties have on occasion generated exceptions which forestall the operation of the principle. Although these exceptions are seldom well presented and are often inconsistent with the reasoning underlying the general principle, we find them to be significant because they suggest that the principle is not so much compelling in itself as serving to provide a basis on which a court may decline to decide a constitutional issue, prevent disruption of bureaucratic functions, and enhance judicial economy. Important as these matters are, they may be outweighed by a matter of general public interest, which we believe to be one of the more important exceptions invoked. *See Lamm v. Barber,* Colo., 565 P. 2d 538 (1977); *Associated Hospital Service of Maine v. Mahoney,* 161 Me. 391, 213 A. 2d 712 (1965); *Loew v. Hagerle Bros.,* 226 Minn. 485, 33 N.W.2d 598 (1948); *State v. Tyler,* 64 Mont. 124, 208 P. 1081 (1922); 30 A.L.R. 378, 387 (1924); 129 A.L.R. 941, 946 (1940).

Ordinarily, we would be loathe to exercise our discretion so as to allow a County to challenge the validity of its own ordinances with respect to ministerial duties. But in the particular circumstances here, where the duties involved, ordinarily discretionary, are ministerial because of the binding arbitration provision, we are inclined to permit the challenge. It is manifest that the validity of a binding

arbitration provision of a collective bargaining law which concerns compensation of public employees is a matter of substantial public importance. Absent public general law in the field, it is likely to be a question which will frequently arise in the relationship between public employee and government employer. The implementation of such a binding arbitration award may require an increase in taxes or give rise to fiscal and budgetary problems affecting third parties. Moreover, it appears that the structure of bureaucratic authority will not be seriously disrupted in this instance by permitting the challenge. These considerations, we believe, outweigh contrary interests. In sum, we think the time is ripe and this case appropriate to determine whether a binding arbitration provision with respect to the compensation of public employees is valid, and we shall proceed to make such determination. *Compare, Mayor and City Council of Baltimore et al. v. American Federation of State, County and Municipal Employees, AFL-CIO, Council No. 67 and Local No. 44 et al.*, 281 Md. 463, 379 A. 2d 1031 (1977). Therefore, we hold that the trial court did not err in denying appellants' motion to prohibit.

## III

Having decided that the trial court did not err in permitting appellees to raise the defense that § 201 B of the County Code was invalid, we turn to the merits of that defense.[9]

---

9. The relief for which appellants prayed in their petition for a writ of mandamus was expressly bottomed on the provisions of § 201 B of the Harford County Code. As we have indicated, note 1, *supra*, § 201 B was repealed after the action here was instituted but before decision by the trial court, and a new collective bargaining law was enacted by the County Council, approved by the County Executive and became effective 9 December 1975. Harford County Code, Art. 3, § 16-91 *et seq.* The case was presented and decided below on the basis of § 201 B. *See* St. Comm'n on Human Rel. v. Amecom Div., 278 Md. 120, 360 A. 2d 1 (1976). It was not suggested on appeal that the case was to be decided under the new law. Apparently, the parties and the trial court were satisfied that rights which were vested under the old law would be disturbed by the new law. *See* Prince George's Co. v. Collington, 268 Md. 69, 75, 299 A. 2d 792 (1973); Yorkdale v. Powell, 237 Md. 121, 124, 205 A. 2d 269 (1964). "Because of the potential for interference with substantive rights . . . , and because of the resulting prejudice against retroactive application, the presumed intent is that [laws] operate prospectively and are to be construed accordingly." St. Comm'n on Human Rel. v. Amecom Div., *supra*, 278 Md. at 123-124. We proceed to decision under § 201 B.

In enacting § 201 B the County Council declared the public policy of the County to be "that County employees be permitted to participate effectively in the determination of the terms and conditions of their employment." The purposes of the policy were "to promote harmonious and cooperative relationships between the County and its employees and to protect the public by assuring at all times the orderly and uninterrupted operations of the County Government" and "to strengthen existing relationships between the County, its employees and their representatives by imposing on each the obligation to enter into negotiations with affirmative willingness to reach agreement in matters of wages, hours, working conditions, and other terms of employment with due regard for, and subject to, the provisions of applicable laws and the charter provisions governing public employment and fiscal procedures in Harford County." § 201 B (a).

We center on the provisions of subsection (h) of § 201 B which deals with "Impasse Procedures." Paragraph (1) calls for mediation after a reasonable period of negotiation upon mutual agreement that an impasse has been reached as to a dispute over the terms of an agreement. If the impasse is not resolved at least 130 days after it has been declared, a factfinder shall be selected, ¶ (2), who shall meet with the parties and make written findings of fact and recommendations for the resolution of the dispute no later than thirty days before the budget submission date, ¶ (3). Standards for the factfinder are spelled out in ¶ (4). Paragraph (5) provides the final step in the resolution of disputes:

> "In the event that a dispute remains unresolved after thirty (30) days of mediation, the County Executive shall submit the dispute to *binding arbitration*. The binding arbitration shall be submitted to the American Arbitration Association. The County Executive may also submit a copy of the findings of fact and recommendations of the factfinder along with his own recommendations for settling the dispute. *The decision of the arbitration*

*board shall be binding on both parties.* (Emphasis added).

The propriety of the order of the trial court dismissing appellants' petition depends upon whether the provisions of ¶ (5) are valid.

Although local governments are normally bound by their contracts, *see American Structures v. City of Balto.,* 278 Md. 356, 364 A. 2d 55 (1976), it has long been recognized that questions of invalidity and enforceability arise when governmental bodies attempt by ordinance or contract to surrender or bargain away their discretionary legislative functions.[10]

The validity of collective bargaining agreements in which municipalities bind themselves to exercise their discretionary legislative powers over compensation of public employees in a particular manner, or agree to delegate such powers to binding arbitration, has been the subject of much recent litigation. Where municipal governments have been authorized by higher law, *i.e.,* state constitutional provisions or public general laws or municipal charter provisions, to enter into collective bargaining agreements which bind them in the exercise of their legislative discretion, the courts have generally upheld such collective bargaining agreements, rejecting contentions that they amount to invalid abdications or delegations of legislative authority.[11] On the other hand,

---

10. *Compare, e.g.,* Home Telephone Co. v. Los Angeles, 211 U. S. 265, 272-273, 29 S. Ct. 50, 51-52, 53 L. Ed. 176 (1908); Rockville v. Brookeville, 246 Md. 117, 148-151, 228 A. 2d 263 (1967) (dissenting opinion); Patuxent Co. v. Commissioners, 212 Md. 543, 551-552, 129 A. 2d 847 (1957); Baltimore v. Ches. & Pot. Tel. Co., 142 Md. 79, 85-86, 120 A. 229 (1923); Bear Creek Co. v. City of Baltimore, 87 Md. 84, 94, 39 A. 530 (1898); Lake Roland Ele. R. R. Co. v. Balto., 77 Md. 352, 366, 370-381, 384-386, 26 A. 510 (1893); City of Leeds v. Town of Moody, 294 Ala. 496, 319 So. 2d 242, 246 (1975); School District No. 69 of Maricopa County v. Altherr, 10 Ariz. App. 333, 458 P. 2d 537 (1969); Pippenger v. City of Mishawaka, 119 Ind. App. 397, 88 N.E.2d 168, 171 (1949); Bucholz v. City of Omaha, 174 Neb. 862, 120 N.W.2d 270 (1963); Atlantic Beach Prop. O. Ass'n v. Town of Hempstead, 3 N.Y.2d 434, 165 N.Y.S.2d 737, 144 N.E.2d 409, 411 (1957); Plant Food Co. v. City of Charlotte, 214 N. C. 518, 199 S.' E. 712, 714 (1938); Modjeski and Masters v. Pack, 215 Tenn. 629, 388 S.W.2d 144, 148 (1965); Dillon, Municipal Corporations § 792 (5th ed. 1911); McQuillin, Mun. Corp. § 29.07 (3rd ed. 1966); 43 Am. Jur. *Public Officers* § 295; 63 C.J.S. *Municipal Corporations* § 981 (c) (1950).

11. *See, e.g.,* Fire Fighters Local 1186 v. City of Vallejo, 12 Cal. 3d 608, 622, 526 P. 2d 971, 981, 116 Cal. Rptr. 507, 517 (1974); City of Biddeford v. Biddeford Teachers Ass'n, 304 A. 2d 387, 391-398 (Me. 1973); Dearborn Fire

in the situation where neither a public general law nor municipal charter provision authorized the municipality to bind itself in the exercise of legislative discretion over public employee compensation, the courts have generally taken the position that attempts to do so in collective bargaining agreements or municipal ordinances are invalid.[12] More than thirty years ago our predecessors gave clear indication of fundamental accord with this position. In *Mugford v. City of Baltimore,* 185 Md. 266, 44 A. 2d 745, decided 28 November 1945 (the decretal order was modified on denial of rehearing on 8 January 1946), "the sole and only question for decision ... [was] the right of [Baltimore] City to permit members of the [Municipal Chauffeurs, Helpers and Garage Employees

F. U. Loc. No. 412 v. City of Dearborn, 42 Mich. App. 51, 201 N.W.2d 650 (1972); City of Amsterdam v. Helsby, 37 N.Y.2d 19, 332 N.E.2d 290, 371 N.Y.S.2d 404 (1975); Harney v. Russo, 435 Pa. 183, 255 A. 2d 560 (1969); City of Warwick v. Warwick Regular Firemen's Ass'n, 106 R. I. 109, 256 A. 2d 206 (1969); State v. City of Laramie, 437 P. 2d 295 (Wyo. 1968). *But cf.* State v. Johnson, 46 Wash. 2d 114, 278 P. 2d 662 (1955).

12. *See, e.g.,* City of Fort Smith v. Arkansas State Council No. 38, 245 Ark. 409, 433 S.W.2d 153 (1968); Fellows v. LaTronica, 151 Colo. 300, 377 P. 2d 547 (1962); Norwalk Teachers' Ass'n v. Board of Education, 138 Conn. 269, 83 A. 2d 482, 486-487 (1951); Wesclin Education Ass'n v. Board of Education, 30 Ill.App.3d 67, 331 N.E.2d 335, 341 (1975); State ex rel. Missey v. City of Cabool, 441 S.W.2d 35, 41 (Mo. 1969); City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539 (1947); Cohoes City Sch. Dist. v. Cohoes Tchrs. Ass'n, 40 N.Y.2d 774, 358 N.E.2d 878 (1976); DeLury v. City of New York, 51 A.D.2d 288, 381 N.Y.S.2d 236, 239-240 (1976). *See also* Tremblay v. Berlin Police Union, 108 N. H. 416, 237 A. 2d 668, 671-672 (1968); Joint School District No. 8 v. Wisconsin Emp. Rel. Bd., 37 Wis. 2d 483, 155 N.W.2d 78, 83 (1967).

For recent commentary upon this question, *see* Anderson, *The Impact Of Public Sector Bargaining,* 1973 Wis. L. Rev. 986, 995-996, 1015-1018; Bernstein, *Alternative To The Strike In Public Labor Relations,* 85 Harv. L. Rev. 459, 467-468 (1971); Blair, *State Legislative Control Over The Conditions Of Public Employment: Defining the Scope of Collective Bargaining for State and Municipal Employees,* 26 Vand. L. Rev. 1, 8-10, 20-21 (1973); Edwards, *The Emerging Duty To Bargain In The Public Sector,* 71 Mich. L. Rev. 885, 887-891, 912 (1973); Grodin, *Political Aspects of Public Sector Interest Arbitration,* 64 Cal. L. Rev. 678, 682-683 (1976); Howlett, *Contract Negotiation Arbitration In The Public Sector,* 42 Cinn. L. Rev. 47, 54-63 (1973); Kheel, *Strikes And Public Employment,* 67 Mich. L. Rev. 931, 937-941 (1969); Kilberg, *Appropriate Subjects For Bargaining In Local Government Labor Relations,* 30 Md. L. Rev. 179 (1970); McAvoy, *Binding Arbitration Of Contract Terms: A New Approach To The Resolution Of Disputes In The Public Sector,* 72 Colum. L. Rev. 1192, 1205-1208 (1972); Ross, *The Arbitration Of Public Employee Wage Disputes,* 23 Indus. & Lab. Rel. Rev. 3, 5-6 (1970); Wellington and Winter, *The Unions and the Cities* (The Brookings Institution, 1971), pp. 38-43, 181-184; Wellington and Winter, *The Limits of Collective Bargaining in Public Employment,* 78 Yale L. J. 1107 (1969); Project, *Collective Bargaining and Politics in Public Employment,* 19 U.C.L.A. L. Rev. 887, 1022-1030 (1972).

Local Union No. 825] to have dues deducted from their wages if they individually so request." *Id.* at 271. The Court stated that this was a matter of policy and held that "the City may, consistently with its general policy extend to individual employees the privilege of having dues deducted and paid to this or any other Unions, upon request of the individual employee." *Id.* at 272. The Court observed:

> "It could not be imposed without the City's consent, but we think it is within the power of the City to extend the privilege to members of a union, provided it is open to all alike and the request for the deduction comes in the first instance from the individual employee. On the other hand, if the City should undertake to make a deduction at the instance or demand of a union, even though the deduction was terminable by any employee at any time, the arrangement would be open to objection as a delegation of governmental power . . . ." *Id.* at 272.

In reaching its conclusion, the Court said:

> "[T]he Department of Public Works could not bind the City, by contract, in any particular relative to hours, wages or working conditions, either as to union employees, or as to all employees in the same classification. To the extent that these matters are covered by the provisions of the City Charter, creating a budgetary system and a civil service, those provisions of law are controlling. To the extent that they are left to the discretion of any City department or agency, the City authorities cannot delegate or abdicate their continuing discretion. Any exercise of such discretion by the establishment of hours, wages or working conditions is at all times subject to change or revocation in the exercise of the same discretion.

> * * *

> "The City has no right under the law to delegate its governing power to any agency. The power of the

City is prescribed in its charter, and the City Charter constitutes the measure of power that is possessed by any of its officials. To delegate such power to an independent agency would be a serious violation of the law. To recognize such delegation of power in any City department might lead to the delegation of such power in all departments, and would result in the City government being administered regardless of its charter." *Id.* at 270-271.

This Court has not thereafter expressed a contrary view.[13]

The County ordinance in question plainly attempted to bind the County in the exercise of legislative discretion over compensation of its public employees. Harford County, pursuant to the Constitution of Maryland, Article XI A, adopted a charter as its instrument of government in order to obtain the benefits of self-government and home rule. Under its Charter, the powers of the County,[14] a body corporate and politic, § 101, "shall be exercised only by the County Council, the County Executive and other officers, agents and employees of the County acting under their respective authorities." § 102. "The Legislative Branch of the County government shall consist of the County Council ... and the officers and employees thereof." § 201. "All legislative powers which may be exercised by Harford County under the Constitution and laws of Maryland, including all law making powers heretobefore exercised by the General Assembly of Maryland but transferred to the people of the County by virtue of the adoption of this Charter, shall be vested in the Council." § 202. "In all of its functions and deliberations, the Council shall act as a body, and shall have no power to create standing committees or to delegate any

13. In this regard, as we have hereinbefore indicated, the charter of a county bears the same general relation to the ordinances of the county that a municipal charter bears to the ordinances of the city, and the constitution of a state bears to state laws. That is, the Harford County Charter is the organic law of Harford County. *See* Harford County v. Schultz, 280 Md. 77, 85, 371 A. 2d 428 (1977); Harford County v. Board, 272 Md. 33, 38, 321 A. 2d 151 (1974); Anne Arundel County v. Moushabek, 269 Md. 419, 422, 306 A. 2d 517 (1973).

14. *See* Maryland Code (1957, 1973 Repl. Vol.) art. 25A, § 5.

of its functions or duties to a smaller number of its members than the whole." § 203.

The County Budget, consisting of the current expense budget, the capital budget and the capital program, and the budget message, "shall represent a complete financial plan for the County reflecting all receipts and disbursements from all sources, including all revenues, all expenditures, and the surplus or deficit in the general fund and all special funds of the County government." § 503. There are provisions for the submission of the budget by the County Executive to the County Council, § 509, and for public hearings, § 511. Thereafter, the Council may decrease or delete any items in the budget except those required by law, and except any provisions for debt service or obligations then outstanding or for estimated cash deficits. § 512 (a). The budget shall be adopted by the Council or stand adopted upon failure of the Council to adopt it, as provided by § 512 (b) and (c). No expenditures of County funds shall be made or authorized in excess of the available unencumbered appropriations therefor. § 520. Although the County may incur debt, no indebtedness for a term of more than one year shall be incurred by the County to meet current operating expenses. § 524. Salaries and wages of classified and exempt service employees, see § 602, shall be determined in accordance with established classification and salary plans, and to be effective they must be submitted to the Council for legislative action thereon. § 603. The personnel law of the County shall include a position classification plan and pay plans. § 604.

We assume, but have no need to decide, that, in light of the above cited cases on the point, had a State public general law or the County Charter authorized the binding arbitration provisions enacted by the County Council, the provisions would be valid. But there is no such authority in either a public general law or the County Charter. As is evident from the cases above cited, the prevailing rule in other jurisdictions is in complete accord with the view expressed in *Mugford* to the effect that absent such authorization it is invalid for a municipality or charter county to attempt to bind itself in the exercise of legislative discretion over compensation of its

public employees. We follow that rule. Because the Harford County ordinance attempted to bind the County in the exercise of its legislative discretion over public employee compensation without being authorized to do so by a public general law or by the County Charter, the provisions of the ordinance to that end are invalid. We hold that the trial court did not err in denying appellants' petition for a writ of mandamus.

*Judgment affirmed; costs to be paid by appellants.*