William P. SCHAEFER, d/b/a
Schaefer Radio Company,
Plaintiff–Appellant,

v.

ANNE ARUNDEL COUNTY, MARY-LAND, a Municipal Corporation,
Defendant–Appellee.

No. 93–1253.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1993.

Decided Feb. 28, 1994.

**ARGUED:** Ronald Gordon Dawson, Smith, Somerville & Case, Baltimore, Maryland, for Appellant. Patricia Ann Logan, Senior Assistant County Attorney, Annapolis, Maryland, for Appellee. **ON BRIEF:** Judson P. Garrett, Jr., County Attorney, Annapolis, Maryland, for Appellee.

## OPINION

NIEMEYER, Circuit Judge:

Claiming that a contract made by an employee of Anne Arundel County, Maryland ("the County"), to sell surplus radio communications equipment should be enforced against the County, William P. Schaefer brought this suit against the County for breach of contract under the district court's diversity jurisdiction. The district court entered a summary judgment in favor of the County, on the grounds that the employee was not authorized to enter into contracts on behalf of the County and that the County was not estopped from denying the employee's authority by reason of having previously honored contracts made by the employee. Upon *de novo* review, we agree with the district court's conclusions and affirm.

I

Anne Arundel County, a municipal corporation, decided in 1985 to replace its radio communications systems for various agencies and put the old equipment into storage, declaring it to be surplus. The County's telecommunications office then authorized the County's purchasing office to sell the surplus radio equipment.

In December 1989, Kenneth E. Queen, a buyer in the County's purchasing office, prepared a Request For Quotation ("RFQ") to solicit bids for the surplus equipment. Rather than going through the formal bidding process required for larger contracts, Queen processed this sale through an informal process, as he had done on at least 15 prior occasions. Queen used a standard form RFQ which had for years been routinely used in connection with informal bid solicitations; accordingly, he did not submit the completed RFQ to the County attorney for review.

The RFQ listed the equipment in four separate lots, one for each County agency from which the surplus equipment had been received.

The bid form requested a lump sum bid for each lot and reserved discretion in the County purchasing agent to accept or refuse bids in the "best interest of the County."

Queen mailed the RFQ to 22 prospective bidders and received three bids in response, as follows. Schaefer submitted separate bids for each of the four lots, including a bid of $5,788 for Lot 1, and a total bid for all four lots of $20,493. Bradley D. Mecham submitted separate bids for only Lots 1, 3 and 4, bidding $5,830.11 for Lot 1, which was $42.11 higher than Schaefer's, and a total of $6,255.39 for the three lots. Magothy Communications submitted a bid of $1,825 for Lot 1 and a bid for all four lots in the aggregate amount of $4,860.

Based on Schaefer's high gross bid for all four lots, Queen called Schaefer on January 18, 1990 and advised him by telephone that he was the highest bidder and would be awarded the contract. Queen wrote a letter, dated January 19, 1990, confirming that Schaefer's offer "has been accepted" for $20,493 for all four lots. The letter was post-

marked January 23, 1990 and received by Schaefer on January 26, 1990.

After Queen sent the letter to Schaefer, but before Schaefer received it, Queen received an inquiry from Mecham regarding the bids. When Mecham was told that all of the lots had been awarded to Schaefer, Mecham pointed out to Queen that Mecham's bid was the highest on Lot 1 by $42.11. After realizing that he had failed to award the contract on Lot 1 to the highest bidder, Queen consulted with his supervisor, the County purchasing agent, James F. Ryan. Ryan instructed Queen to award the contract to the highest bidder on each lot.

Thus, Queen advised Schaefer by telephone, still before Schaefer actually received the letter confirming the County's acceptance of all four lots, that Lot 1 would go to Mecham and that Lots 2, 3 and 4 would still be awarded to Schaefer. Thereafter, over Schaefer's protest, the County executed bills of sale to Mecham for Lot 1 and to Schaefer for Lots 2, 3 and 4.

Having been denied Lot 1 for his bid of $5,788, which he alleges was accepted by Queen to form a binding contract, Schaefer filed suit in the district court, demanding $455,000 in damages. On cross-motions for summary judgment, the district court entered judgment for the County, concluding that Queen was not authorized to sign contracts on behalf of the County. The court observed, in addition, that Queen's failure to accept the highest bid was *ultra vires* by reason of Section 2–118(b) of Article 10 of the County Code, which instructs purchasing agents to dispose of supplies in a manner that results in the "highest monetary return to the County." Finally, the district court concluded that the County could not be bound by prior custom because estoppel does not apply in these circumstances. From the entry of judgment in favor of Anne Arundel County, Schaefer appealed.

## II

■ Schaefer contends that under standard principles of contract law, Queen, on behalf of Anne Arundel County, agreed to sell him Lot 1 for $5,788. The contract was formed, he argues, by his bid of $5,788 and Queen's oral acceptance which was confirmed by the January 19, 1990 letter.

Even though Queen called Schaefer to tell him that his bid on Lot 1 had been accepted, and followed up with a letter stating that Schaefer's offer for all four lots "has been accepted for $20,493," Queen did call Schaefer, *before* Schaefer received the letter, to tell him that a mistake had been made and that Schaefer would be awarded only Lots 2, 3 and 4. While this scenario has prompted the parties to engage in a debate under traditional principles of contract law about whether a contract had been formed, we agree with the district court's analysis that resolution of that dispute is irrelevant, since Queen lacked authority to sign the contract for the County.

■ It is fundamental that property purchased by a municipal corporation with taxpayer's money to enable the County to carry out its governmental functions is held in trust by County officials, and such property cannot be sold without specific statutory authority. *See City of Baltimore v. Chesapeake Marine Ry. Co.*, 233 Md. 559, 572, 197 A.2d 821 (1964). The County directs our attention to the Anne Arundel County Charter which provides:

> All contract bid forms and all contracts shall be approved by the County Solicitor as to form and legal sufficiency. Following such approval, all contracts shall be signed in behalf of the County by the County Executive or his designee.

Anne Arundel County Charter, Art. 9, § 908 (1985). Even though Queen had the permission of the County's purchasing agent, Ryan, to sell surplus property for the County, Queen was concededly not the designee of the County Executive. Ryan, who had been delegated the authority to contract on behalf of the County as the County's purchasing agent, *see* Anne Arundel County Code, Art. 10, § 2–118, did not have the power to delegate further to Queen this authority to sign contracts. Thus, Queen was not authorized by applicable law to enter into the contract purportedly formed by his oral communication with Schaefer and the confirming letter of acceptance dated January 19, 1990.

Schaefer contends that even if Queen had no actual authority, he had apparent authority to sign the contract on the County's behalf. Schaefer argues that it was the practice of the County in its informal bidding process to designate buyers in the purchasing agent's office to sell surplus property and that this practice continued for many years without problem. In fact, Schaefer has demonstrated that he personally had, under the same informal bidding process, purchased other equipment from the County through Queen about nine months prior to the present disputed bid. Schaefer thus argues that the County's custom and practice of delegating authority to the buyer should bind the County as a permissible interpretation by the County of its own regulations and that the County should be estopped from asserting any *ultra vires* defense.

In the context of private contract law, apparent authority will bind the principal to a third party according to the principal's manifestations to the third party. *See Restatement (Second) of Agency* § 8 (1958). But it is well-established that when a private party deals with a municipal corporation, the doctrine of apparent authority is modified to accommodate the public interest. As stated in *Gontrum v. City of Baltimore*, 182 Md. 370, 35 A.2d 128 (1943), "[a]lthough a private agent, acting in violation of specific instructions, yet within the scope of a general authority, may bind his principal, the rule, as to the effect of a like act of a public agent, is otherwise." *Id.* at 375, 35 A.2d 128 (quoting *Baltimore v. Eschbach*, 18 Md. 276, 282 (1862)). To conclude otherwise would amount to the establishment of the principle that the public can be deprived of public property contrary to their authority, based merely on a course of conduct, perhaps improper, followed by a public employee. The public interest will not accommodate such a notion. As the Maryland Court of Appeals has held:

> Generally, no estoppel as applied to a municipal corporation can grow out of dealings with public officers of limited authority where such authority has been exceeded, or where the acts of its officers and agents were unauthorized or wrongful.

No representation, statement, promises or acts of ratification by officers of a public corporation can operate to estop it to assert the invalidity of a contract where such officers were without power to enter into such a contract on behalf of the corporation.

*Gontrum*, 182 Md. at 378, 35 A.2d 128; *see also Chesapeake Marine Ry.*, 233 Md. at 580–81, 197 A.2d 821; *Maryland Classified Emp. Ass'n, Inc. v. Anderson*, 281 Md. 496, 501 n. 2, 380 A.2d 1032 (1977).

Not only does public policy limit the application of an estoppel against a public municipal corporation, but so does the public nature of the County's contracting procedures. Anne Arundel County's procedures for the disposition of public property are specified clearly in its laws, which are publicly accessible. A member of the public who deals with the municipal corporation and profits thereby is responsible for knowing whether the person he is dealing with has the authority to contract away public property. "It is a fundamental principle of law that all persons dealing with the agent of a municipal corporation are bound to ascertain the nature and extent of his authority." *Gontrum*, 182 Md. at 375, 35 A.2d 128. As the Maryland cases explain, "it seems more reasonable that an individual should occasionally suffer from the mistakes of public agents or officials, than to adopt a rule, which, through improper combinations and collusion, might be turned to the detriment and injury of the public." *Gontrum*, 182 Md. at 376, 35 A.2d 128 (quoting *Baltimore v. Eschbach*, 18 Md. at 282). Thus, persons who contract with the government do so at their peril when they fail to take notice of the limits of the agent's authority. *Id.*

The only exception to the limitation of estoppel against municipal corporations in Maryland arises when "injustice sufficient to overcome the superior and generally overriding claims of the public would result if estoppel was not invoked against the [municipality]." *Chesapeake Marine Ry.*, 233 Md. at 582, 197 A.2d 821. This exception does not apply in this case, however, because Schaefer has failed to demonstrate this overriding injustice.

Schaefer was the second-highest bidder on Lot 1, and the mistake in awarding him the contract for that lot was immediately noted by the County. Thus, even before Schaefer received the acceptance letter, he was advised of the error and of the correction. Moreover, the record contains no evidence that Schaefer sustained any loss or damage as a result of the mistake. We have found no evidence in the record that, over the period of a day or two before Schaefer was notified of the mistake, he incurred any reliance damage or changed his position for the worse. Schaefer's loss of a bid, having been the second-highest bidder, is not the kind of hardship that is envisioned by Maryland law in providing the exception to the general rule that municipalities will not be estopped by reason of unauthorized conduct of one of its employees. *Cf. Maryland Classified Emp. Ass'n*, 281 Md. at 501 n. 2, 380 A.2d 1032.

*AFFIRMED.*