470 A.2d 345

**Edward A. GRIFFITH et ux.**

v.

**Donald K. WAKEFIELD et al.**

**No. 159, Sept. Term, 1982.**

Court of Appeals of Maryland.

Feb. 1, 1984.

Motion for Reconsideration Denied March 5, 1984.

R. Bruce Alderman and Eugene H. Cunningham, Jr., Towson (Robert J. Aumiller and White, Mindel, Clarke & Hill, Towson, on the brief), for appellants.

George H. Cohen, Jeffrey Gibbs, David M. Silberman, and Bredhoff and Kaiser, Washington, D.C., Daniel F. Goldstein, Baltimore, amicus curiae for appellees The Md. State Fraternal Order of Police, The Md. State and District of Columbia Professional Fire Fighters Ass'n.

Gordon S. Berman, Baltimore (Jerome Blum, Baltimore, on the brief), for appellee, Baltimore County Firefighters Ass'n, Local 1311.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

ELDRIDGE, Judge.

The controversy in this case is over the validity of a Baltimore County charter amendment requiring resolution of labor disputes, involving county-employed fire fighters, through binding arbitration. The specific issue before us is whether the charter amendment constitutes proper "charter material" under Art. XI–A of the Maryland Constitution as construed in *Cheeks v. Cedlair Corp.*, 287 Md. 595, 415 A.2d 255 (1980).

In July 1982, petitions proposing an amendment to the Baltimore County Charter were submitted to the Board of Supervisors of Elections for Baltimore County which, after finding that the petitions complied with all applicable laws, certified the proposed charter amendment for submission to the voters of Baltimore County in the general election to be

held on November 2, 1982. The proposal was to add a new § 544 to Article V, as well as to amend §§ 706(a), 709 and 715 of Article VII of the Baltimore County Charter.

The proposed new language stated that if county-employed fire fighters had not reached a written contract agreement with Baltimore County by March 1 of any year, either party was entitled to demand arbitration by a board of arbitration, with the decision of that board being final and binding upon both parties. The proposal set out the selection procedures for appointment to the three member board, the board's powers, the procedures to be followed by the board, and the factors to be taken into account by the board in making its award. The proposed amendment stated that a decision of the board rendered in accordance with the powers and procedures set forth in the amendment "shall be final and binding" upon the County and the union, with no appeal permitted. Finally, the amendment mandated that the County's budget submitted by the County Executive to the County Council include any funds necessary to effectuate the award of the board and that this funding "shall not be decreased or deleted" by the council.

Before the November 1982 election, Edward A. Griffith and Joyce L. Griffith, residents and taxpayers of Baltimore County, filed suit in the Circuit Court for Baltimore County against the members of the Board of Supervisors of Elections. The plaintiffs, on their own behalf and "on behalf of all other taxpayers, similarly situated," alleged, inter alia, that the proposed charter amendment would "unlawfully initiate new legislation not authorized by" Article XI–A of the Maryland Constitution and "that the terms of the proposed charter amendment are patently local legislation and not charter material." The plaintiffs also asserted that the proposed charter amendment violated the due process and equal protection guarantees of the Fourteenth Amendment and of Article 24 of the Maryland Declaration of Rights, in that the proposed amendment granted the right of binding arbitration to only one class of municipal employees. The plaintiffs sought declaratory relief and an injunction re-

straining the defendants from placing the proposed amendment on the ballot for the November 1982 general election.

Thereafter, the Baltimore County Firefighters Association intervened in the proceeding as an additional defendant. The circuit court, with the consent of all parties, postponed any further proceedings in the case until after the charter amendment had been voted upon in the general election. On November 2, 1982, the voters of Baltimore County approved the charter amendment.

The plaintiffs then moved for summary judgment, and the defendant-intervenor firefighters association cross-moved for summary judgment. On January 13, 1983, the circuit court granted the association's motion for summary judgment, holding that the charter amendment did not violate Article XI–A of the Maryland Constitution. The court further held that plaintiffs did not have standing to raise the due process and equal protection issues. The plaintiffs took an appeal to the Court of Special Appeals, and, before any further proceedings in that court, they filed a petition for a writ of certiorari which we granted.

Article XI–A of the Maryland Constitution, adopted by the voters on November 2, 1915, provided for a significant degree of political self-determination for counties choosing home rule status. Section 1 of Article XI–A sets forth the procedures for the preparation of a county charter which, if properly presented to and adopted by the electorate, "shall become the law of said . . . County, subject only to the Constitution and Public General Laws of this State." Section 3 requires that any charter adopted under § 1 "shall provide for an elective legislative body in which shall be vested the law-making power of said . . . County" and that such county council "shall have full power to enact local laws" for the county. The procedures to be followed in amending a county charter and the effect thereof are spelled out in §§ 5 and 6 of Article XI–A.

In *Cheeks v. Cedlair Corp., supra,* 287 Md. 595, 415 A.2d 255, this Court held invalid a citizen-initiated proposal to amend the Charter of Baltimore City on the ground that the proposed amendment dealt with subject matter beyond the permissible scope of a charter as set forth in Article XI–A.[1] The proposed charter amendment would have created a tenant-landlord commission and prescribed "in lengthy detail, the powers and duties of the Commission in administering the system of rent control." 287 Md. at 602, 415 A.2d 255. The Court analogized an Article XI–A charter to a "local constitution" which is intended to establish "the form and structure of government." *Id.* at 606–607, 415 A.2d 255. The Court then contrasted this power to organize a local government, reserved to the people of a charter county and of Baltimore City under Article XI–A, with legislative or "law-making" power (*id.* at 607, 415 A.2d 255):

"Absent an intention to permit a contrary usage, a charter amendment within the context of Art. XI–A is necessarily limited in substance to amending the form or structure of government initially established by adoption of the charter. A charter amendment, therefore, differs in its fundamental character from a simple legislative enactment. Its content cannot transcend its limited office and be made to serve or function as a vehicle through which to adopt local legislation."

Applying this principle to the facts of *Cheeks,* the Court found the proposed rent-control amendment to be "essentially legislative in character" in that it "constitute(d) an exer-

---

1. Although *Cheeks* involved a Baltimore City charter amendment, Baltimore City is treated, along with the counties, as an Article XI–A jurisdiction, rather than as a municipality governed by Article XI–E of the Constitution. For example, the language of Article XI–A, § 5 begins:

"Amendments to any charter adopted by the City of Baltimore or by any County of this State under the provisions of this Article may be proposed by a resolution of the Mayor of Baltimore and the City Council of the City of Baltimore, or the Council of the County, or by a petition signed by not less than 20% of the registered voters of the City or County."

*See Cheeks,* 287 Md. at 597–601, 415 A.2d 255.

cise of the police power in all respects similar to the enactment of a local law." *Id.* at 608, 415 A.2d 255. Because, under Section 3 of Article XI–A, the legislative body (in *Cheeks,* the Baltimore City Council), and not the electorate, is given "full power to enact local laws," the Court held the proposed Baltimore City charter amendment invalid.

The Court's decision in *Cheeks* is dispositive of the issue presented in the case at bar. Like the charter amendment in *Cheeks,* the proposed charter amendment in the present case prescribes "in lengthy detail"[2] an entire system of binding arbitration for a select group of county employees; it leaves nothing for the determination of the County Executive or the County Council.

The proposed Baltimore County charter amendment states that its purpose is "to prevent strikes, job actions and other disruptions that might impede the protection of the public health, safety and general welfare." In order to achieve this end, the amendment mandates that "if the certified employee organization or organizations representing (the) fire fighters" and the county have not reached a written contract agreement on "terms and conditions of employment" by the first day in March of any year, submission to a board of arbitration is mandatory upon the request of either party. The amendment sets forth, in minute detail, the composition, function and powers of the board. The board is to be composed of three members. One member is to be appointed by the County Executive and one is to be appointed by the certified fire fighters organization; both of these members must be selected "within four days of the request for arbitration." The third member is to be selected by the two previously chosen members, also within four days, from a list of candidates furnished by the American Arbitration Association. In the event that the two arbitrators are unable to agree on the choice of the third arbitrator, the American Arbitration Association is to select the third arbitrator, who "shall act as chairman" of the board of arbitra-

---

2. 287 Md. at 602, 415 A.2d 255.

tion. The board is to begin the arbitration proceedings within seven days after the selection of the chairman and to make its decision "within fifteen days after the commencement of the arbitration proceedings," although the chairman may extend this time requirement. The board is granted "the power to administer oaths, compel the attendance of witnesses, and require the production of evidence by subpoena." The proposed amendment also delineates the factors to be considered by the board in making its award.[3]

Under the proposed amendment each party must provide the board with "a detailed itemization of the last proposal made" by that party at the prior negotiations. These proposals may be amended by either party at any time prior to the close of the board's hearings, at which time the board is to "order implementation of the last proposal of one of the respective parties."

The decision of the board of arbitration is to be "final and binding upon the Baltimore County Executive and the Baltimore County Council." The amendment provides that the decision of the board "shall constitute a mandate to the County Executive with respect to such matters which can be remedied administratively by him." The County Executive must include "in the current expense budget submitted to the County Council" any funds required to be expended by

---

3. New § 544(d) states:
    "(d) The Board of Arbitration shall identify the major issues in the dispute, review the positions of all parties and shall take into consideration those factors which are normally utilized in the determination of wages and other benefits in the collective bargaining process. These factors shall include, but shall not be limited to, the following: the wages, benefits, hours and other working conditions of employees performing similar services in other jurisdictions in Maryland, in other political subdivisions in other states, and in the private sector; the special nature of the work performed by the fire fighters, including hazards of employment, physical requirements, educational qualifications, job training and skills, shift assignments and the demands placed upon such employees as compared to other employees; cost of living data; and the financial condition of Baltimore County, which shall include a consideration of both available financial resources and the sources of additional financial resources."

the board's decision and these funds "shall not be decreased or deleted by the County Council ... (and) shall not be subject to prior approval by the County Council ...." Any matter decided by the board which "require(s) legislative action for implementation ... shall be enacted within forty-five days following the date of the arbitration decision." In this way, the binding arbitration feature of the amendment, at the point it is invoked, would divest the elected officials of Baltimore County of any discretion in reaching an agreement on "the wages, benefits, hours and working conditions" of the fire fighters.

When viewed as a whole, it is clear that the Baltimore County amendment is not intended to, nor does it, alter the "form or structure" of the Baltimore County government. Instead, the core of the amendment is the imposition of a comprehensive system of binding arbitration concerning a single group of county employees. As in *Cheeks,* the charter amendment proposed in Baltimore County is "essentially legislative in character;" it is a complete and specifically detailed legislative scheme. Again as in *Cheeks,* the present case presents a situation whereby the electorate, through the charter amendment process, is attempting to circumvent the local legislative body and enact local law. This is impermissible under Article XI–A of the Maryland Constitution which, in § 3, mandates that the County Council "shall have full power to enact local laws of said ... County."

In attempting to distinguish the case at bar from *Cheeks,* and in arguing that the proposed Baltimore County amendment is proper "charter material," the defendant fire-fighters association relies on *Maryland Cl. Emp. Ass'n v. Anderson,* 281 Md. 496, 380 A.2d 1032 (1977). This reliance is misplaced. In *Anderson* we held invalid an ordinance enacted by the Harford County Council which mandated that a decision of an arbitration board on wages and benefits for county employees be binding upon the county. We held that the Harford County Council lacked the authority to delegate this essentially legislative function to a board of arbitrators, at least absent authorization by state public

general law or the county charter. The Court in *Anderson* thus stated (281 Md. at 512–513, 380 A.2d 1032):

"We assume, but have no need to decide, that, in light of the above cited cases on the point, had a State public general law or *the County Charter authorized* the binding arbitration provisions enacted by the County Council, the provisions would be valid. But there is no such *authority* in either a public general law or *the County Charter.* As is evident from the cases above cited, the prevailing rule in other jurisdictions is in complete accord with the view expressed in *Mugford* [*v. City of Baltimore,* 185 Md. 266, 44 A.2d 745 (1945)*]* to the effect that absent *such authorization* it is invalid for a municipality or charter county to attempt to bind itself in the exercise of legislative discretion over compensation of its public employees. We follow that rule. Because the Harford County ordinance attempted to bind the County in the exercise of its legislative discretion over public employee compensation *without being authorized to do so by* a public general law or by *the County Charter,* the provisions of the ordinance to that end are invalid." (Emphasis added.)

Turning to the instant case, the defendant firefighters association asserts that because *Anderson* held that "authorization of the charter is required, then the matter must be one which is concerned with the 'form or structure of government' ... [and] is properly deemed 'charter material.'" (Brief, p. 9.) The flaw in this argument is the failure to distinguish between "authorization" on the one hand and a detailed local enactment on the other hand. It is common for constitutions or charters to authorize, or preclude, specified types of enactments by legislative bodies. This is quite different from a charter itself containing all of the detailed provisions concerning the subject.

If the proposed Baltimore County charter amendment had merely *authorized* the Baltimore County Council to enact a system of binding arbitration with regard to the compensation of Baltimore County employees, and if, pursuant to that authorization, the Baltimore County Council had exercised

its discretion to enact *an ordinance* containing provisions similar to those in the proposed charter amendment now before us, the present case would be distinguishable from *Cheeks.* Under those circumstances, we would be required to decide the question which was "assume[d]" but not decided in *Anderson.* In the present case, however, the proposed charter amendment did not authorize the County Council to enact binding arbitration legislation for county employees. It did not authorize any decisions by the constitutional legislative body. Instead, under the proposal, the charter itself would contain all of the law on the subject, and the Baltimore County Council would be deprived of all decision-making authority concerning the subject. Nothing in the *Anderson* case supports the validity, under Art. XI–A, of such a charter provision.

In light of our holding that the proposed charter amendment is invalid under Art. XI–A of the Maryland Constitution, it is unnecessary for us to reach the petitioners' due process and equal protection arguments.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO ENTER A JUDGMENT CONSISTENT WITH THIS OPINION. RESPONDENT BALTIMORE COUNTY FIREFIGHTERS ASSOCIATION, LOCAL 1311, TO PAY COSTS.

RODOWSKY, Judge, dissenting.

I respectfully dissent. The subject amendment is charter material. It alters the form and structure of government in Baltimore County in a most fundamental way. Under certain circumstances it takes fiscal power away from the County Executive and from the County Council and vests that power in arbitrators.

Baltimore County's Charter embodies an executive budget system. A scheme of compulsory arbitration for one or more classes of county employees is at loggerheads with an executive budget system. By making the policy decision

that compulsory arbitration should apply to the wages and other conditions of employment of county firefighters, when such issues remain unresolved through collective bargaining, the people of Baltimore County in essence have limited the power of their County Executive to propose appropriations for the fire department. Under the amendment a board of arbitration can decide some of the components of the fire department budget which the County Executive must, in turn, submit to the legislative branch. In this aspect of the budget process arbitrators substitute for the County Executive. Similarly, power of the County Council to reduce appropriations contained in the executive budget is in part taken away because appropriations required to implement a decision of arbitrators cannot be reduced. This is bedrock charter material. Accordingly the County Council could not, absent charter authorization, adopt by ordinance a system of compulsory arbitration for labor relations with county employees. That is the teaching of *Maryland Cl. Emp. Ass'n v. Anderson,* 281 Md. 496, 380 A.2d 1032 (1977).

The majority opinion does not conflict with the above conclusions. We are, however, told by the majority that the subject amendment is invalid, not because it fails to contain some charter material, but because it is too detailed. It is said invalidity lies in placing in the charter all of the steps necessary to create a functioning compulsory arbitration system, with the result that no judgments remain to be made by the County Council concerning implementation. The principle controlling the majority's decision seems to be that the people of a home rule county, whose charter permits its amendment by initiative, may initiate amendments which enable council implementation, but may not, by initiative amendments which are self-executing, reallocate power over county finances. The holding in *Cheeks v. Cedlair Corp.,* 287 Md. 595, 415 A.2d 255 (1980) does not go so far.

Once the subject amendment is recognized as reallocating fiscal power, the matters of detail which the majority criticizes become, in my view, an integral part of the charter material. If governmental power is taken from the execu-

tive and from the legislature, in order for it to be exercised by someone else, that someone else must be identified. When the someone else is to be a board of arbitration, it is appropriate to define how the particular individuals who will act as arbitrators are to be selected from time to time. Because the arbitrators are intended to exercise the power only as occasion requires, and not to hold office for a term, the method for identifying them becomes detailed. In principle, however, the mechanism for selecting arbitrators is no different than a charter provision specifying that a given county official is to be appointed by the county executive with the approval of the county council.

Specific time limits are also included in the subject amendment. These serve a twofold purpose going to this change in the form and structure of government. First, the reallocated part of Baltimore County's fiscal power can be utilized by the arbitrators only under certain conditions and within certain time constraints. These are limitations on the exercise of the granted power. Simply because the provisions are unusual, they do not become different in character from, for example, a charter provision fixing a maximum on the number of days per year when the county council may sit to enact ordinances. Secondly, the time limits insure that the arbitrators function consistently with the timetable applicable to the preparation and adoption of the balance of the budget as it is processed through the traditional executive budget system.

There is a further limitation on the exercise by the arbitrators of this transferred portion of fiscal power. They are effectively prohibited from creating their own package of wages and other conditions of employment, because they must choose either the last proposal of management or the last proposal of labor. This is obviously further to expedite the process.

It is acknowledged by the majority that the people of a charter county may, by charter amendment initiative, partially scrap the executive budget system by opting for the

principle of compulsory arbitration of labor disputes with county employees. Given that premise, I find nothing in the Home Rule Amendment which then prohibits those voters from also specifying the who, when and how of integrating into the county budget those appropriations which originate from that newly created power source.

By writing separately, I intimate no views on the due process and equal protection arguments.

Judge COLE authorizes me to state that he joins in the views of this dissenting opinion.