895 A.2d 1068

**MAYOR AND CITY COUNCIL OF OCEAN CITY, Maryland**

v.

**Victor BUNTING, et al.**

No. 2484, Sept. Term, 2004.

Court of Special Appeals of Maryland.

April 4, 2006.

Guy R. Ayres, III (Bruce F. Bright, on brief), Ocean City, for appellant.

Michael Marshall (Schlachman, Belsky & Weiner, P.A., on brief), Baltimore, for appellee.

Panel DAVIS, KRAUSER and BARBERA, JJ.

KRAUSER, J.

An amendment to the Ocean City Charter, proposed by the City Council and passed by referendum vote in 2002, permits "employees" of the Ocean City Police Department to engage in collective bargaining with respect to "the formulation and implementation of personnel policies affecting their employment."[1] It further directs the Ocean City Council to enact a labor code and, within that code, to address "[t]he manner of establishing units appropriate for collective bargaining."

To comply with this electoral directive, the Council adopted a labor code. But, that code, in establishing collective bargaining units, effectively precludes officers of the rank of lieutenant and higher from participating in those units and thus from engaging in collective bargaining. This preclusion, Ocean City claims, was necessary to prevent an insoluble conflict of interest at the highest levels of the department.

Challenging both the legality of that codal provision and the propriety of the assumption underlying it, six members of the Ocean City police force, holding the rank of either lieutenant or captain, filed a "Petition for Mandamus and Complaint for Declaratory Judgment" in the Circuit Court for Worcester County, naming appellants, the Mayor and City Council of Ocean City (collectively "Ocean City"), as defendants. They requested a declaration that the labor code violates the charter amendment by wrongfully prohibiting officers of their rank and higher from participating with other Ocean City Police Department employees in collective bargaining, as well as a writ of mandamus implementing that declaration.

---

1. *Ocean City Charter,* § C–1003B.

In response, Ocean City filed an answer and a counter complaint, requesting a contrary declaration. Denying that request, the circuit court declared the labor code provision in question a violation of the charter amendment, as the officers urged. That decision prompted Ocean City to note this appeal, asking us to undo what the circuit court has done.

## FACTS

The Ocean City Charter originally prohibited all Ocean City employees from engaging in collective bargaining. But, on October 15, 2002, Ocean City voters approved, by referendum vote, an amendment to the charter, declaring that the provisions of the charter prohibiting collective bargaining "are not applicable to employees of the Ocean City Police Department." [2] The charter amendment further provides in part:

B. In order that employees of the Ocean City Police Department may participate in the formulation and implementation of personnel policies affecting their employment, they shall have the right to organize and bargain collectively through representatives of their choosing, subject to procedural regulations that the Council shall provide by law. The Council shall provide by law a labor code for employees of the Ocean City Police Department which shall include the following:

(1) The manner of establishing units appropriate for collective bargaining;

(2) The manner of designating or selecting bargaining representatives; and

(3) Definitions for remedies for unfair labor practices.

The Council is authorized to negotiate through its designated representatives with collective bargaining representatives of police employees. . . . [3]

---

**2.** *Ocean City Charter,* § C–1005B. *See also* Md.Code (1957, 2005 Repl. Vol.), § 13(f) and (g) of Art. 23A (setting forth provisions for voter petitions for referendum for charter amendments proposed by the legislative bodies of municipalities).

**3.** *Ocean City Charter,* § C–1003B.

On August 4, 2003, the Mayor and City Council adopted a labor code, as required by the charter amendment. Section 4–1 of that code provides: "Employees shall have the right of self-organization, to form, join, or assist employee organizations, to bargain collectively through representatives of their own choosing on terms and conditions of employment, and shall also have the right to refrain from any or all such activities."

The Council then created "appropriate" collective bargaining units, as directed by the charter amendment.[4] Those units include "employees classified as Police Officer[s] who ha[ve] completed his/her initial entrance level training for certification as a police officer, Police Officer First Class, and Sergeant." [5] They exclude "Confidential Employees, Supervisory Employees, Casual Employees, Reserve Police, or employees of the Office of the Fire Marshall," [6] and thus, in effect, bar officers of the rank of lieutenant and above from collective bargaining.

That is because the code defines an "Employee" as "[a] person employed by the Ocean City Police Department who is classified as a Police Officer and who has completed his/her initial entrance level training for certification as a police officer, or Police Officer First Class or Sergeant," [7] a "Confidential Employee" as "[a] person employed by the Ocean City Police Department who has regular access to privileged information regarding personnel management or labor policies," [8] and a "Supervisory Employee" as:

A person employed by the Ocean City Police Department who has the authority to exercise independent judgment in the interest of the employer to hire, transfer, suspend,

---

**4.** *Id.,* § C–1005B(1).

**5.** *Labor Code for Ocean City, Maryland,* § 7–4.

**6.** *Id.*

**7.** *Id.,* § 2–5.

**8.** *Id.,* § 2–2.

layoff, recall, promote, discharge, assign, reward other employees, recommend discipline to other employees, or having the responsibility to direct them or adjust their grievances, or effectively to recommend such action if in connection with the foregoing exercise of such authority is not of a routine or clerical nature but requires the use of independent judgment, including police officers of the rank of lieutenant and higher.[9]

By defining "Employees," "Confidential Employees," and "Supervisory Employees" as it does, the code effectively precludes high-ranking police officers, that is, lieutenants and above, from engaging in collective bargaining. Challenging that exclusion, a group of six officers of the Ocean City Police Department holding the rank of either lieutenant or captain filed suit against Ocean City, asserting that the charter amendment establishes that "all" persons employed by the Ocean City Police Department are entitled to participate in collective bargaining and that, by defining employee to exclude lieutenants and captains, the Council has violated "the mandate of the voters." Appellees sought a declaratory judgment to that effect and a writ of mandamus ordering Ocean City to permit them to participate in collective bargaining.

Ocean City filed a counter complaint seeking a declaratory judgment that the lieutenants and captains are not entitled to collectively bargain. A trial was held, and the circuit court subsequently ruled in favor of appellees. The court issued an "Opinion and Order" that stated:

[I]t is this 29th day of November, 2004, by the Circuit Court for Worcester County, Maryland hereby

ORDERED that Plaintiffs' and Defendants' Request for Declaratory Relief be and the same hereby is GRANTED; and it [is] further

HELD that Chapter 42, Article IV of the *Code of the Town of Ocean City Maryland* be and the same hereby is INVALID to the extent that it prohibits any employee of

9. *Id.,* § 2–12.

the Ocean City Police Department from collectively bargaining; and it is further

ORDERED that the Defendants shall permit Plaintiffs to collectively bargain; and it is further

ORDERED that Defendants may designate, through a Labor Code, collective bargaining units that are comprised of exclusive categories of employees.

## DISCUSSION

■ Ocean City claims that the trial court erred in reading the charter amendment to require that all persons employed by the Ocean City Police Department be permitted to participate in collective bargaining. To persuade us of the merits of its contention, it argues that its restrictive reading of the amendment is supported by the canons of statutory construction and that, in any event, the broader reading proposed by appellee would render the amendment "legislative" in nature and thus unconstitutional.[10] We agree.

---

**10.** Municipal corporations in Maryland, such as Ocean City, are authorized by Article XI-E, §§ 3 and 4 of the Constitution of Maryland to adopt charters, and to amend or repeal provisions thereof, either by a petition of qualified voters or by a resolution of the municipal corporation's legislative body, which may, as here, become the subject of a voter petition for referendum. *See* Code (1957, 2005 Repl.Vol.), §§ 13(f) and (g) of Art. 23A. Article 23A of the Annotated Code sets forth additional provisions regarding municipal corporations. In pertinent part, § 2 of Art. 23A provides:

 (a) *General Authority.*—The legislative body of every incorporated municipality in this State, except Baltimore City, by whatever name known, shall have general power to pass such ordinances not contrary to the Constitution of Maryland, public general law, or, except as provided in § 2B of this article [regarding county legislation], public local law as they may deem necessary in order to assure the good government of the municipality, to protect and preserve the municipality's rights, property, and privileges, to preserve peace and good order, to secure persons and property from danger and destruction, and to protect the health, comfort, and convenience of the citizens of the municipality....

Md.Code (1957, 2005 Repl.Vol.), § 2(a) of Art. 23A.

 The authority granted to municipal corporations regarding charters is similar to that granted to the various counties of the State and Baltimore City by Article XI-A, § 1 of the Constitution of Maryland. The

 Charters are subject to the "same canons of statutory construction that apply to the interpretation of statutes." *O'Connor v. Baltimore County*, 382 Md. 102, 113, 854 A.2d 1191 (2004). Just as "the cardinal rule of statutory interpretation is to ascertain the intention of the legislature," so it is "the cardinal rule" of charter interpretation. *Id.* To determine what that intention was, we look first to the language of the amendment. It is, as we have stated in the context of statutory construction, "the primary source of legislative intent." *Id.* If the meaning of the amendment is plain and unambiguous, we need look no further.

Unfortunately, that is not the case here. Ambiguity pervades the provision, rendering it both lexically and contextually ambiguous. It does not state, for instance, that "all" employees of the police department shall have the right to collectively bargain, but only that "employees", in general, shall have that right. While the officers argue that the word "employees" in the context of the provision must refer to "all employees" of the department, Ocean City insists, and we agree, that the very imprecision of this term implies the contrary. By implication, it leaves to the Council the task of defining its scope by legislation.

Moreover, what is only implied by the provision's general reference to "employees" appears to be conferred by the amendment's subsequent instruction to the Council to "provide by law a labor code" which shall include, among other things, "[t]he manner of establishing units appropriate for collective bargaining". *Ocean City Charter,* § C–1003B(1). By this language, the Council was given the right to determine what constitutes an "appropriate" collective bargaining unit. And, of course, the corollary of having the right to determine what is an appropriate bargaining unit is the right to deter-

---

authority set forth in § 2(a) of Article 23A, regarding legislative bodies of municipal corporations, is similar to the authority granted to the legislative bodies of the counties and Baltimore City by Article XI-A, §§ 2 and 3.

mine what is not, which the Council did by restricting bargaining units to officers below the rank of lieutenant.

Admittedly, this charter verbiage, by itself, hardly presents a compelling case for permitting Ocean City to exclude high-ranking officers from collective bargaining units; that is, until we apply another canon of construction. That canon requires us to "avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Nesbit v. Gov't Employees Ins. Co.*, 382 Md. 65, 75, 854 A.2d 879 (2004). To read the Charter Amendment, as appellees wish us to do, that is, that all employees of the police department, including the Chief of Police himself, may engage in collective bargaining, is an unreasonable interpretation of the strictures of the amendment. It plainly offends the basic principles of collective bargaining, creating unresolvable conflicts of interest both between Ocean City and its command staff and within the command staff itself.

There is no real dispute that the department's captains and lieutenants were part of its management. At the trial of this matter, the Chief of Police described the responsibilities of these officers as follows:

> They are the people that direct the day-to-day operations of the police department. They implement and actually give out the definition of what policies and procedures are in the department. They have the responsibility of directing officers and they hav·· so many responsibilities; from direction of the employees, to the discipline of employees, to the day-to-day supervision. They are responsible for step increases, evaluations. They make recommendations for promotions. They make recommendations for demotion.

> They are supervisors. They're managers of the police department and each—specifically the captains are managers of each of their divisions and they're responsible for every aspect of their divisions from budget, the creation of the budget, the implementation of their budget, to moving personnel as they deem fit.

And the lieutenants are also very inclusive in that. They are instrumental managers in my command staff. They attend staff meetings and at our staff meetings we go over various policies and procedures and I use those people as counselors to me in all the decisions that I make for the police department.

In fact, the Chief stated that she designated a captain and a lieutenant to negotiate *on behalf of Ocean City* during collective bargaining, in order "to ensure that management rights were maintained during the negotiations." In sum, not only do these officers have access to confidential information regarding all issues which are likely to be the subjects of collective bargaining, but they provide guidance to the department in such matters. To permit these officers to engage in collective bargaining themselves places them in a hopeless conflict of interest as they perform their duties, and leaves management in a position where it can no longer depend on the faithfulness of those who represent it. The Chief of Police hinted at the enormity of the problem posed by such an interpretation of the amendment when she commented that if the captains and lieutenants were permitted to collectively bargain she "would not have direct control over [her] command staff anymore" because they would instead "be directed by a collective bargaining agreement."

More than half a century ago, the United States Congress recognized the unpalatable consequences that flow from extending collective bargaining rights beyond workers to their supervisors and amended the National Labor Relations Act so that "[t]he term 'employee'" did "not include any individual employed as a supervisor." 29 U.S.C. § 152(3). The Act defines "supervisor" as:

any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a

merely routine or clerical nature, but requires the use of independent judgment.

*Id.,* § 152(11).

The reasons why Congress felt impelled to make this distinction were outlined by the Supreme Court in *Nat'l Labor Relations Bd. v. Int'l Bhd. of Elec. Workers, Local 340,* 481 U.S. 573, 593 n. 17, 107 S.Ct. 2002, 95 L.Ed.2d 557 (1987). The Court explained:

> In 1947 the NLRA was amended so that employers could prohibit supervisors from obtaining or maintaining union membership, *see* 29 U.S.C. §§ 152(3), 164(a), because Congress believed that granting supervisors a protected right to join a union is "inconsistent with the policy of Congress to assure workers freedom from domination or control by their supervisors" and "inconsistent with our policy to protect the rights of employers." H.R.Rep. No. 245, 80th Cong., 1st Sess., 14 (1947).

The rationale for this distinction, the Court declared, is "[t]hat an employer is entitled to the undivided loyalty of its representatives." *Nat. Labor Relations Bd. v. Yeshiva Univ.,* 444 U.S. 672, 682, 100 S.Ct. 856, 63 L.Ed.2d 115 (1980). That is, the amendment was designed "[t]o ensure that employees who exercise discretionary authority on behalf of the employer will not divide their loyalty between employer and union." *Id.* at 687–88, 100 S.Ct. 856.

Like the "supervisors" specifically excluded from collective bargaining under the NLRA, the captains and lieutenants of the Ocean City Police Department are the agents of their employer; they provide direction and discipline to those who work under them and are responsible for promotions, demotions, and pay increases or cuts. The amendment should not be read to create the untenable situation that the NLRA was wisely amended to avoid: the pitting of those who are entrusted with leading a department against the department itself in the name of collective bargaining.

Moreover, there is nothing in the record before us to suggest that in drafting this amendment the Council ever

contemplated that it would cover the highest-ranking officers in the department. Nor is there anything to indicate that Ocean City residents were led to believe, before the referendum vote, that *all* persons employed by the police department would be entitled to collectively bargain. Rather, the record suggests that this issue was first raised after the amendment was passed. Confirming this sequence of events, the Chief of Police testified, and counsel for Ocean City proffered, that, after voter approval of the amendment, the Council briefly considered permitting captains and lieutenants to engage in collective bargaining. But, upon further reflection, it determined that this would be inappropriate.

We can assume, however, that, in drafting the proposed charter amendment, the Council was aware that charter provisions, much like the one they were contemplating, had been adopted by other Maryland counties, notably Montgomery and Prince George's County. While the Montgomery County charter bestows collective bargaining rights on police department employees, without any express limitation, and the Prince George's County charter does the same for county employees, both counties restrict that right to non-supervisory employees in their county codes.

Section 510 of the Montgomery County Charter states that "[t]he Montgomery County Council shall provide by law for collective bargaining with binding arbitration with an authorized representative of the Montgomery County police officers...." Although § 33–75 of the Montgomery County Code interprets that charter provision to require that "police employees" be permitted to collectively bargain, § 33–76 of the code defines "[e]mployee" as "any police officer classified as a sergeant, master police officer I, master police officer II, police officer I, police officer II, police officer III, or police officer candidate, or an equivalent nonsupervisory classification, but not a police officer in any higher classification."

Similarly, § 908 of the Prince George's County Charter establishes that Prince George's County employees in general may collectively bargain. Section 13A–102 of the Prince

George's County Code defines employee to exclude "management level employees, confidential employees, and officials appointed pursuant to a policy-making position."

The approach taken by Montgomery County and Prince George's County, of using their codes to define the boundaries of what had been granted in their charters, may explain why no Ocean City Council member felt the need to inquire as to the precise scope of the collective bargaining amendment before it went to the voters. Presumably, it was believed that the Ocean City Council would handle this matter as other counties had, by enacting appropriate legislation. If nothing else, the approach taken by Montgomery County and Prince George's County provides a model for reading the Ocean City amendment as Ocean City does, while, at the same time, it underscores that there is no countervailing model supporting appellees' position.

■ And, finally, the canons of construction require us to construe a statute or charter amendment so that it is not unconstitutional or otherwise illegal. *See Maryland State Admin. Bd. of Elec. Laws v. Talbot County,* 316 Md. 332, 346–47, 558 A.2d 724 (1988). To construe Ocean City's Charter amendment so that it prevents the Council, Ocean City's legislative body, from exercising any discretion as to who, among its employees, may collectively bargain would render that amendment "legislative," Ocean City maintains, and, thus, unconstitutional.

■ A charter "is, in effect, a local constitution." *Cheeks v. Cedlair Corp.,* 287 Md. 595, 606, 415 A.2d 255 (1980). It "provide[s] a broad organizational framework establishing the form and structure of government in pursuance of which the political subdivision is to be governed and local laws enacted." *Id.* at 607, 415 A.2d 255. Its " 'basic function' ... is 'to distribute power among the various agencies of government, and between the government and the people who have delegated that power to their government.' " *Save Our Streets v. Mitchell,* 357 Md. 237, 248, 743 A.2d 748 (2000) (citation omitted).

■ Consequently, it follows that an amendment to a charter "is necessarily limited in substance to amending the form or structure of government initially established by adoption of the charter." *Cheeks*, 287 Md. at 607, 415 A.2d 255. It may not "serve or function as a vehicle through which to adopt local legislation." *Id.* For "[t]o permit the voters by charter amendment, to exercise the City's police or general welfare powers would constitute an unlawful extension or enlargement of the City's limited grant of express powers and would violate the constitutional requirement that those powers be exercised by ordinance enacted by the City Council." *Id.* at 609, 415 A.2d 255 (emphasis omitted).

Invoking these principles, the Court of Appeals has invalidated proposed charter amendments, for being legislative in character, that would have established "a comprehensive system for regulating rents within the City's residential housing market," *Cheeks*, 287 Md. at 608, 415 A.2d 255; or created detailed procedures for arbitrating labor disputes involving county firefighters, *Griffith v. Wakefield*, 298 Md. 381, 470 A.2d 345 (1984); or prohibited the expenditure of county funds to install or maintain speed bumps as well as to remove them. *Save Our Streets*, 357 Md. 237, 743 A.2d 748. In *Cheeks* and *Griffith*, what rendered the proposed charter amendments at issue "legislative" was that they imposed, in the words of the *Griffith* Court, "a complete and specifically detailed legislative scheme." *Griffith*, 298 Md. at 388, 470 A.2d 345. Whereas had the proffered amendment "merely authorized the Baltimore County Council to enact a system of binding arbitration with regard to the compensation of Baltimore County employees," the *Griffith* Court pointed out, it might have reached a different result. *Id.* at 389, 470 A.2d 345 (emphasis omitted). "It is common," the Court explained, "for constitutions or charters to authorize, or preclude, specified types of enactments by legislative bodies." *Id.* "This is quite different," the Court stressed, "from a charter itself containing all of the detailed provisions concerning the subject." *Id.*

Unlike in *Cheeks* and *Griffith*, we are not asked to review the constitutionality of all or a substantial part of the charter

amendment at issue, but only to interpret the specific provision of the Ocean City charter amendment permitting "employees" of the police department to collectively bargain.[11] Consequently, the question of whether the Ocean City charter amendment imposes a comprehensive "collective bargaining" scheme is not before us. But the lesson of *Cheeks* and *Griffith* is still applicable. Here we are asked to review a provision that has nothing to do with "the broad organizational framework establishing the form and structure" of Ocean City, *Cheeks,* 287 Md. at 607, 415 A.2d 255, and that is sufficiently "specific" and "technical" in nature that it is clearly an issue for the Council and not the voters to resolve. In other words, it is "legislative" in character.

To illustrate this point: if we were to rule that the charter amendment permits all "employees" of the Ocean City Police Department to engage in collective bargaining, contrary to the will and judgment of Ocean City's duly elected Council, we would leave the Ocean City Council without the means to ever change this policy should it prove in the interests of the town to do so. A legislative remedy, like the one before us, would have been ruled out by this decision. That would leave only another charter amendment. But, if the current amendment is not so specific as to be legislative, certainly a second amendment intended to fix its over-reach, by specifically identifying the ranks to be excluded from collectively bargaining, would be.

Furthermore, the question of what ranks in the police department should be allowed to participate in collective bargaining is not only specific but technical in nature: It requires a detailed and comprehensive knowledge of the structure and inner-workings of the police department as well as an under-

---

11. We observe that the charter amendment also sets forth rather detailed procedures for binding arbitration in the event of an impasse in collective bargaining. We are not asked to and do not address whether those procedures exceed the bounds of proper charter material, as the matter has no bearing on the issue before us: Whether the amendment requires that captains and lieutenants be permitted to collectively bargain.

standing of its present needs and future demands. Consequently, it does not lend itself to resolution by referendum, but to the type of thorough and on-going review that the legislative process promises. That is why we conclude that Ocean City was acting lawfully and within the powers conferred by its charter when it limited, in its labor code, the right to collective bargain to officers below the rank of lieutenant.

JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR WORCESTER COUNTY FOR ENTRY OF A DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION; APPELLEES TO PAY THE COSTS.